T.C. Memo. 2012-1


UNITED STATES TAX COURT


KAYLN M. CARPENTER, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 15589-10, 15590-10,   Filed January 3, 2012.
          15591-10.


<u>Larry D. Harvey</u>, for petitioners.

<u>Sara Jo Barkley</u> and <u>Luke D. Ortner</u>, for respondent.


MEMORANDUM OPINION


HAINES, <u>Judge</u>:  These cases are before the Court on respondent's motion for partial summary judgment.  The cases are consolidated for purposes of trial, briefing, and opinion.

---

[1]Cases of the following petitioners are consolidated herewith:  Scott A. Van Wyhe, docket No. 15590-10; and John C. and Sharon L. McSween, docket No. 15591-10.

Kayln M. Carpenter, Scott A. Van Wyhe, and John C. and Sharon L. McSween (the McSweens)[2] separately petitioned the Court for redetermination of the following deficiencies in Federal income tax and additions to tax and penalties:[3]

### Kayln M. Carpenter, docket No. 15589-10

| | | Addition to Tax and Penalty | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
| 2004 | $21,125 | $496 | $4,225 |

### Scott A. Van Wyhe, docket No. 15590-10

| | | Addition to Tax and Penalty | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
| 2004 | $839 | $42 | $168 |
| 2006 | 15 | 15 | 3 |

### John C. and Sharon L. McSween, docket No. 15591-10

| | | Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 2003 | $57,090 | $11,418 |
| 2004 | 64,498 | 12,900 |
| 2005 | 14,574 | 2,915 |

The issue for determination after concessions is whether petitioners are entitled to charitable contribution deductions

_____

[2]The McSweens are considered a single petitioner having filed joint returns, having received a single notice of deficiency, and having filed a single petition with this Court.

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

with respect to conservation easements petitioners granted to the Greenlands Reserve (Greenlands).[4]

## Background

The following facts are based upon the parties' pleadings, affidavits, and exhibits in support of and in opposition to the motion for partial summary judgment. They are stated solely for the purpose of deciding the motion and not as findings of fact in this case. See Fed. R. Civ. P. 52(a). At the time petitioners filed their petitions, they resided in Colorado.

The facts of all petitioners' cases, though not identical, are substantially similar. On or about December 23, 2003, each petitioner acquired a parcel or parcels of land in Teller County, Colorado, from Sixty Seven, LLC (Sixty Seven). Petitioners held their parcels in fee simple. On or about December 24, 2003, each petitioner conveyed a conservation easement to Greenlands, a charitable nonprofit Colorado corporation which qualifies as a tax-exempt nonprofit organization under sections 501(c)(3) and 170(b)(1)(A)(iv).[5]

---

[4]Respondent did not address whether petitioners are liable for the accuracy-related penalties under sec. 6662(a) and whether petitioner Carpenter and the McSweens are liable for the addition to tax under sec. 6651(a) in his motion for partial summary judgment; therefore we do not address these issues in this opinion.

[5]The McSweens owned two parcels of land in Teller County. They conveyed a conservation easement over the first parcel of land on or about Dec. 24, 2003, and conveyed a conservation easement over the second parcel on or about Jan. 29, 2004.

Petitioner Carpenter claimed a $385,600 charitable contribution deduction on her 2004 Federal income tax return. Petitioner Van Wyhe claimed a $272,998 charitable contribution deduction on his 2004 Federal income tax return, a $265,247 charitable contribution deduction carryover on his 2005 Federal income tax return, and a $262,876 charitable contribution deduction carryover on his 2006 Federal income tax return. The McSweens claimed a $336,500 charitable contribution deduction on their 2003 joint Federal income tax return, a $336,500 charitable contribution deduction on their 2004 joint Federal income tax return, a $311,776 charitable contribution deduction carryover on their 2004 joint Federal income tax return, and a $612,844 charitable contribution deduction carryover on their 2005 joint Federal income tax return. All of the Federal income tax returns were timely filed.

All of the conservation easement deeds were virtually identical and contained the following provision for extinguishment of the easement:

> Extinguishment – If circumstances arise in the future such that render the purpose of this Conservation Easement impossible to accomplish, this Conservation Easement can be terminated or extinguished, whether in whole or in part, by judicial proceedings, or by mutual written agreement of both parties, provided no other parties will be impacted and no laws or regulations are violated by such termination. * * * [Emphasis added.]

A notice of deficiency was mailed to each petitioner disallowing petitioners' charitable contribution deductions. Respondent

cited the emphasized language above in determining that petitioners had not met the section 1.170A-14(g)(6)(i), Income Tax Regs., requirement that their conservation easements be granted in perpetuity. Each petitioner timely filed a petition with this Court.

## Discussion

I.   Introduction

We may grant summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). In pertinent part, Rule 121(d) provides:  "When a motion for summary judgment is made and supported * * *, an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response * * * must set forth specific facts showing that there is a genuine issue for trial." Respondent has moved for partial summary judgment and bears the burden of proving there is no genuine issue of material fact as to whether petitioners' contributions of the conservation easements were exclusively for conservation purposes, and so we infer facts in the manner most favorable to petitioners. See, e.g., Anonymous v. Commissioner, 134 T.C. 13, 15 (2010) (citing Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985)).

## II.  Qualified Conservation Contribution

A taxpayer is generally allowed a deduction for any charitable contribution made during the taxable year.  Sec. 170(a)(1).  A charitable contribution is a gift of property to a charitable organization, made with charitable intent and without the receipt or expectation of receipt of adequate consideration.  See Hernandez v. Commissioner, 490 U.S. 680, 690 (1989); United States v. Am. Bar Endowment, 477 U.S. 105, 116-118 (1986); see also sec. 1.170A-1(h)(1) and (2), Income Tax Regs.  While a taxpayer is generally not allowed a charitable contribution deduction for a gift of property consisting of less than an entire interest in that property, an exception is made for a "qualified conservation contribution."  See sec. 170(f)(3)(A), (B)(iii).

A "qualified conservation contribution" is a contribution (1) of a "qualified real property interest", (2) to a "qualified organization", (3) which is made "exclusively for conservation purposes".  Sec. 170(h)(1); see also sec. 1.170A-14(a), Income Tax Regs.  Respondent concedes that there was a contribution of a qualified real property interest and that at the time of the contributions Greenlands was a qualified organization under section 170(h)(3).  Therefore, we focus on the third requirement; i.e., whether petitioners' contributions of the donated property were exclusively for conservation purposes.

A contribution is made exclusively for conservation purposes only if it meets the requirements of section 170(h)(5). Glass v. Commissioner, 124 T.C. 258, 277 (2005), affd. 471 F.3d 698 (6th Cir. 2006). Section 170(h)(5)(A) provides that "A contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity." In order for a conservation easement to be enforceable in perpetuity, the "interest in the property retained by the donor * * * must be subject to legally enforceable restrictions * * * that will prevent uses of the retained interest inconsistent with the conservation purposes of the donation." Sec. 1.170A-14(g)(1), Income Tax Regs. Section 1.170A-14(g)(6)(i), Income Tax Regs. (extinguishment regulation), states in pertinent part:

> If a subsequent unexpected change in the conditions surrounding the property that is the subject of a donation under this paragraph can make impossible or impractical the continued use of the property for conservation purposes, the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding and all of the donee's proceeds * * * from a subsequent sale or exchange of the property are used by the donee organization in a manner consistent with the conservation purposes of the original contribution.

Respondent has filed a motion for partial summary judgment, arguing that petitioners' conservation easements are not protected in perpetuity because the conservation easement deeds allow the parties to extinguish the conservation easements by mutual agreement. Petitioners in response make two arguments.

First, petitioners argue that summary judgment on this issue is inappropriate because there is a genuine issue of material fact. Second, petitioners argue that the donations created charitable trusts or restricted gifts which implicate the doctrine of cy pres. Under cy pres termination of the conservation easements would require a judicial proceeding which would prevent the parties from extinguishing the easements by mutual agreement. We take each of petitioners' arguments in turn.

A. Whether Summary Judgment Is Inappropriate Because There Is a Genuine Issue of Material Fact

Section 1.170A-14(g)(6), Income Tax Regs., allows for extinguishment of a conservation easement if subsequent unexpected changes in the conditions surrounding the property can make "impossible or impracticable" (emphasis added) the continued use of the property for conservation purposes. On the other hand the conservation easement deeds allow for extinguishment of the conservation easement only if circumstances arise in the future that render the purpose of the conservation easements "impossible to accomplish". (Emphasis added.) Petitioners argue that the conservation easement deeds have more stringent provisions on extinguishment than those in the regulations and that we must determine whether conditions existed at the time of grant of the conservation easements that would make it impossible to accomplish the purposes of the easements. Petitioners are asking

us to read the extinguishment regulation in tandem with section 1.170A-14(g)(3), Income Tax Regs.

Section 1.170A-14(g)(3), Income Tax Regs. (so-remote-as-to-be-negligible standard), provides that

> A deduction shall not be disallowed under section
> 170(f)(3)(B)(iii) * * * merely because the interest
> which passes to, or is vested in, the donee
> organization may be defeated by the performance of some
> act or the happening of some event, if on the date of
> the gift it appears that the possibility that such act
> or event will occur is so remote as to be negligible.

Petitioners argue that the conditions necessary for extinguishment of the conservation easements are not possible or the possibility is so remote as to be negligible and that in either event the likelihood of such conditions' occurring and thus the likelihood of extinguishment is a material question of fact precluding summary judgment.  Respondent argues that the so-remote-as-to-be-negligible standard is irrelevant to our inquiry. We agree with respondent.

This Court has previously found that the so-remote-as-to-be-negligible standard does not modify the extinguishment regulation.  In other words, the Commissioner is not required to make a showing with respect to the likelihood or possibility of extinguishment in determining whether an easement complies with the requirements of the extinguishment regulation.  See Kaufman v. Commissioner, 136 T.C. 294, 311-313 (2011).  The risk addressed by the extinguishment regulation, an "unexpected"

change in conditions surrounding the property, likely describes a class of events the range of whose probabilities includes, if it is not coincident with, the range of probabilities of events that are so remote as to be negligible. See id. at 313. However, the issue before us is not whether there is a possibility that events could occur which would trigger the conservation easements' extinguishment provision, but whether upon the happening of such events the ability to extinguish the conservation easements through mutual agreement of the parties violates the requirements of the extinguishment regulation.

Section 1.170-14(g)(6), Income Tax Regs., suggests that any extinguishment of a conservation easement be done through judicial proceedings. It is petitioners' inclusion of the right of the parties to extinguish or terminate the conservation easements "by mutual written agreement of both parties" that causes the issues before us. It is not a question as to the degree of probability of the changed conditions that would justify extinguishment of the restrictions.

Although there is a genuine issue of material fact as to whether circumstances could arise which would make it impossible to accomplish the purposes of the conservation easement, that issue is irrelevant to our inquiry. Disputes over facts that are not outcome determinative do not preclude the entry of summary

judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).

      B.    <u>Whether the Donation Created a Charitable Trust or a
Restricted Gift Which Implicates the Cy Pres Doctrine,
Requiring a Judicial Proceeding To Extinguish the
Easement</u>

Petitioners alternatively argue that the donations of the
property created a charitable trust or a restricted gift which
implicates the cy pres doctrine, requiring a judicial proceeding
to extinguish the easement.  To determine whether the
conservation easement deeds comply with requirements for the
conservation easement deduction under Federal tax law, we must
look to State law to determine the effect of the deeds.  State
law determines the nature of the property rights, and Federal law
determines the appropriate tax treatment of those rights.  <u>Estate
of Lay v. Commissioner</u>, T.C. Memo. 2011-208.  Specifically, we
must look to State law to determine how conservation easements
may be extinguished.  Pursuant to Col. Rev. Stat. sec. 38-30.5-
107 (2010), "Conservation easements in gross may, in whole or in
part, be released, terminated, extinguished, or abandoned by
merger with the underlying fee interest in the servient land or
water rights or in any other manner in which easements may be
lawfully terminated, released, extinguished or abandoned."
Petitioners recognize that conservation easements may be
extinguished through many means under Colorado State law,
including by mutual consent of the parties; however, they argue

that their contributions to Greenlands each constitute a restricted gift or a charitable trust.  As a result, the cy pres doctrine applies to those contributions and thus these conservation easement contributions made to Greenlands may be extinguished only by a judicial proceeding and may not be extinguished by mutual consent of the parties.

Petitioners argue that the gifts to Greenlands each constitute a charitable trust.  We agree with respondent and find that the transfers of property to Greenlands did not create charitable trusts.  No court in the State of Colorado has decided whether a donation of a conservation easement to a charitable organization constitutes a charitable trust.  If the highest court of the State has not spoken on the issue, then this Court must apply what it finds to be the State law after giving proper regard to relevant rulings of other courts of the State. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967).  In determining whether a donation to a hospital constituted a charitable trust under Colorado law, the Court in George W. Vallery Meml. Fund, Inc. v. Saint Luke's Cmty. Found., Inc. (In re Estate of Vallery), 883 P.2d 24, 27 (Colo. App. 1993) opined:

> Colorado recognizes that the intent to create a trust can be inferred from the nature of property transactions, the circumstances surrounding the holding and transfer of property, the particular documents or language used, and the conduct of the parties.  See Matter of Estate of Daniels, 665 P.2d 594 (Colo. 1983). However, while no particular language must be used to create a trust or to manifest the necessary intention

to create a trust, this inference should not come easily.  Bishop & Diocese of Colorado v. Mote, 716 P.2d 85 (Colo.), cert. denied, 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986).  Clear, explicit, definite, unequivocal, and unambiguous language or conduct establishing the intent to create a trust is required.  Bishop & Diocese of Colorado v. Mote, supra; Goemmer v. Hartman, 791 P.2d 1238 (Colo. App. 1990).

Thus, even though formal or technical words are not necessary, see Marshall v. Grauberger, 796 P.2d 34 (Colo. App. 1990), the fact that the document makes no mention of a "trust" is significant in determining whether a trust was intended.  See Denver Chapter No. 145, Order of Ahepa v. Mile Hi City Chapter No. 360, 171 Colo. 541, 469 P.2d 740 (1970).

Moreover, 1 Restatement, Trusts 3d, sec. 2 (2003), defines a charitable trust in pertinent part as a "fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship".  We do not find any clear, explicit, definite, unequivocal, and unambiguous language in the conservation easement deeds to create a trust.  We also do not find any intention to create a trust.  As a result, we do not find that petitioners created charitable trusts under Colorado law with their conservation easement deeds.

Next, petitioners ask us to determine whether each of their donations to Greenlands constitutes a restricted gift under Colorado law.  This is another novel issue of Colorado law, as no court in the State of Colorado has decided whether a donation of a conservation easement to a charitable organization constitutes a restricted gift.  Consequently, we apply what we find to be the State law after giving proper regard to relevant rulings of other

courts of the State of Colorado.  See Commissioner v. Estate of
Bosch, supra at 465.  We find that petitioners' transfers to
Greenlands did constitute restricted gifts.  Restricted gifts are
"contributions conditioned on the use of a gift in accordance
with the donor's precise directions and limitations."  Schmidt,
"Modern Tomb Raiders:  Nonprofit Organizations' Impermissible Use
of Restricted Funds", 31 Colo. Law. 57, 58 (2002).

Petitioners made outright gifts to Greenlands with a
restriction on the use of the gifts.  The conservation easement
deeds restricted Greenlands' use of the gift to "preserve and
protect in perpetuity the Conservation Values of the Property for
the benefit of this generation and generations to come."
Moreover, at least one commentator has argued that conservation
easements eligible for Federal charitable contribution income tax
deductions are also, by definition, charitable gifts for a
specific purpose, i.e., a restricted gift.  See McLaughlin,
"Internal Revenue Code Section 170(h):  National Perpetuity
Standards For Federally Subsidized Conservation Easements Part 2:
Comparison to State Law", 46 Real Prop. Tr. & Est. L.J. 1, 23
(2011).  Thus we find that each petitioners' donation of a
conservation easement to Greenlands is a restricted gift under
Colorado law.

Having found that petitioners each made a restricted gift,
we turn to the issue of whether the doctrine of cy pres is

applicable to these restricted gifts.  Although the doctrine of cy pres ordinarily applies to charitable trusts, at least one Colorado court has found no sound reason to require the existence of a formal trust to apply the doctrine.  See George W. Vallery Meml. Fund, Inc. v. Saint Luke's Found., Inc. (In re Estate of Vallery), supra.  The court in Estate of Vallery held that "even in the absence of a formal trust, the doctrine of cy pres is available when there is an absolute bequest to a charitable organization."  Id. at 28.

Under the cy pres doctrine, equity allows deviation from the terms of a charitable bequest when the particular purpose of the gift becomes impossible or impracticable to accomplish and the donor manifested a more general intention to devote the property to charitable purposes.  Id.; see also Dunbar v. Board of Trs. of George W. Clayton College, 461 P.2d 28 (Colo. 1969).[6]

Petitioners argue that the doctrine of cy pres applies to their restricted gifts.  Petitioners further argue that cy pres

---

[6]
"If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the Court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."

Dunbar v. Board of Trs. of George W. Clayton College, 461 P.2d 28, 30 (Colo. 1969) (quoting 11 Restatement, Trusts 2d, sec. 399 (1959)).

prevents the parties from agreeing to extinguish the conservation easements in the event it becomes impossible to carry out the purposes of the conservation easements. Rather, it is petitioners' contention that the cy pres doctrine will require a judicial proceeding in the event the purposes of the conservation easements become impossible to carry out. Respondent argues that cy pres is inapplicable to the restricted gifts because petitioners did not manifest a more general intention to devote the property to charitable purposes. We agree with respondent.

We are called upon to determine petitioners' intention in granting the conservation easements. Specifically, we are called upon to determine whether petitioners manifested a more general intent to devote the property to a general charitable purpose beyond the restrictions placed in the conservation easement deeds. Neither party has asserted that any provision in the conservation easement deeds besides the extinguishment clauses is ambiguous and, absent ambiguity, interpretation of the deeds is a question of law. See <u>Penning v. Ferguson (In re Ferguson Trusts)</u>, 929 P.2d 33, 35 (Colo. App. 1996). Our objective in construing the deeds, as with any other contract, is to determine the intent of the drafters. See <u>id.</u>

The purpose of the conservation easements as stated in the conservation easement deeds is to:

> assure that the Property will be returned to and
> retained forever predominantly in a natural, scenic,

and open space condition, to preserve and protect in perpetuity the wildlife, aesthetic, ecological and environmental values, and water quality characteristics of the Property, and to prevent any use of the Property that will impair or interfere with the Conservation Values of the Property and to extinguish any and all development rights and allocations and density rights and allocations, whether presently existing or arising in the future. * * *

The conservation easement deeds also reserve certain rights to petitioners:

Grantor reserves to itself, and to its successors and assigns, all rights accruing from their ownership of the Property, including the right to engage in and permit or invite others to engage in all uses of the Property that are not expressly prohibited herein and are not inconsistent with the purpose of the Conservation Easement. * * *

We do not find that petitioners intended to donate their property to Greenlands with a general charitable purpose. The deeds make clear that petitioners wanted to retain all rights over the donated property not specifically granted to Greenlands in the conservation easement deeds. Should the purpose of the deeds become impossible to fulfill, petitioners demonstrated no intention to have the donated property put to some other general charitable use. As a result, we hold that the cy pres doctrine is inapplicable to petitioners' restricted gifts.

Having found that the cy pres doctrine is inapplicable to petitioners' restricted gifts, we find that petitioners' conservation easements may be terminated by a mutual agreement of the parties. We must now determine whether the ability to

extinguish the easements by mutual agreement of the parties violates the requirements of the extinguishment regulation.

C.  Whether the Parties' Ability To Extinguish the Conservation Easements Through Mutual Consent Violates the Requirements of the Extinguishment Regulation

We have previously discussed the restrictions required by the extinguishment regulation.  In Kaufman v. Commissioner, 136 T.C. 294 (2011), we declined to rule that a conservation deed must require a judicial proceeding to extinguish an easement for the easement to be perpetual.  Id. at 307 n. 7.  We once again decline to create an absolute rule.  Rather, we find that the extinguishment regulation provides taxpayers with a guide, a safe harbor, by which to create the necessary restrictions to guarantee protection of the conservation purpose in perpetuity.

Petitioners' conservation easement deeds allow for extinguishment of the conservation easements through mutual consent of the parties.  Extinguishment by mutual consent of the parties does not guarantee that the conservation purpose of the donated property will continue to be protected in perpetuity.  As at least one commentator has noted, the "restrictions [in a deed] are supposed to be perpetual in the first place, and the decision to terminate them should not be solely by interested parties.  With the decision-making process pushed into a court of law, the legal tension created by such judicial review will generally tend

to create a fair result." Small, Federal Tax Law of Conservation Easements 16-4 (1986).

Because petitioners' easements may be extinguished by mutual consent of the parties, the easements fail as a matter of law to comply with the enforceability in perpetuity requirements under section 1.170A-14(g), Income Tax Regs. For that reason, we find that the easements were not protected in perpetuity and thus were not qualified conservation contributions under section 170(h)(1). We shall grant the motion with respect to the easements and deny petitioners' charitable contribution deductions.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will
be issued</u>.